UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-CV-80922-MARRA/JOHNSON

MID-CONTINENT CASUALTY COMPANY,

    Petitioner,

v.

CONSTRUCTION SERVICES AND
CONSULTANTS, INC., now known as GOLDMARK
HOLDINGS, INC., TEP HOLDING, INC.,
f/k/a TRANSEASTERN PROPERTIES, INC.,
and HERCULANO JUAREZ,

    Respondents.
_____/

**ORDER AND OPINION**

THIS CAUSE is before the Court upon Mid-Continent Casualty Company's Motion For Summary Judgment [DE 37] and Respondent, Transeastern's Motion For Final Summary Judgment [DE 44]. The motions are fully briefed and ripe for review. The competing motions for summary judgment filed by Mid-Continent and Transeastern demonstrate that there are no material facts in dispute and this case is ripe for summary judgment.

**Facts Not in Dispute**

On or about January 1, 2005, Mid-Continent issued a policy to Construction Services and Consultants, Inc. ("CSCI"), Policy No. 04-GL-000574802, effective from January 1, 2005, to January 1, 2006 (hereafter the "Policy"). On or about January 18, 2002, CSCI and Transeastern Properties, Inc. ("Transeastern") entered into a

contract for the construction of homes (the "Contract").  The Contract's Scope of Work identifies the construction project as "Versailles" (the "Project").  In the Contract, Transeastern is identified as "Owner" and CSCI is identified as "Contractor."  *Id*.  Neither party disputes the language contained in the Policy or in the Contract.

Respondent Herculano Juarez ("Juarez") filed suit against Transeastern in a Florida state court action styled *Juarez v. TEP Holding, Inc. f/k/a Transeastern Properties, Inc.*, Case No. 50 2006 CA003320XXXXMB, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "underlying suit") for damages because of bodily injury suffered when Juarez fell from scaffolding in November 2005.  On May 31, 2007, Juarez filed an Amended Complaint in the underlying suit which contained new allegations against Transeastern and also named CSCI as a defendant.  Juarez is suing Transeastern for negligence, gross negligence and wrongful conduct of Transeastern and its employees in the failure to exercise reasonable care for construction activities at the Project.  Amended Complaint ("Compl.") ¶¶ 8-20.  Juarez is suing CSCI for negligence, gross negligence and wrongful conduct of CSCI in the failure to exercise reasonable care for the component parts of the second floor plywood decking, in CSCI's capacity as the shell package contractor.  *Id*. at ¶¶ 21-32.

Transeastern tendered its defense to Mid-Continent as a purported additional insured under the Policy.  Mid-Continent agreed to provide a defense to Transeastern

under a reservation of rights. Mid-Continent filed this action, seeking a declaration of its duty to defend and indemnify Transeastern and CSCI in the underlying suit. Mid-Continent makes several arguments in support of its contention that it has no duty to defend or indemnify Transeastern and CSCI: (1) that no "insured contract" exists to satisfy the precondition of coverage for Transeastern under the additional insured endorsement to the Policy because the indemnification provision of the Owner/Contractor Agreement is void and unenforceable; (2) that Transeastern is being sued only for its own negligence and that of its employees, which falls outside the scope of coverage under the additional insured endorsement; and (3) coverage for CSCI is excluded because Juarez was a subcontractor's employee. According to Mid-Continent, no duty exists to either defend or indemnify Transeastern or CSCI for the claims asserted in the underlying suit.

Transeastern has filed a motion for summary judgment asking the Court to find, as a matter of Florida law, that Mid-Continent is obligated to defend and indemnify Transeastern for the bodily injury caused in whole or in part by CSCI or those acting on its behalf.

### Discussion

*A. Insured Contract*

The Contract between Transeastern and CSCI provided, in relevant part, that:

> DAMAGES TO PERSONS OR PROPERTY: Contractor [CSCI]
> hereby indemnifies and holds harmless Owner [Transeastern]
> . . . against all liability, claims judgments, loss, expenses,

> demands, damage or causes of action of whatever nature . . . for injury to or death of persons . . . arising out of or in any way connected with the work, including, but not limited to, *claims occasioned in whole or in part by the acts or omissions of any of the indemnities* [Transeastern],[or] claims occasioned in whole or in part by the acts or omissions of Contractor [CSCI], its Subcontractors or the agents or employees of Contractor or Subcontractors . . . Contractor [CSCI] shall protect and defend all indemnities [Transeastern] in any suit or action brought on account of any such injury . . .and will pay for any costs or expenses of such persons . . .

As the Contract indicates, CSCI not only agreed to defend and indemnify Transeastern from all claims and liability arising out of the acts or omissions of CFCI and its agents or employees, but it also agreed to defend and indemnify Transeastern from Transeastern's own acts or omissions.

Florida Statute, section 725.06. Construction contracts; limitation on indemnification provides as follows:

> (1) Any portion of any agreement or contract for or in connection with . . . any construction, alteration, repair, or demolition of a building, structure, appurtenance, or appliance . . . between an owner of real property and an architect, engineer, general contractor, subcontractor, sub-subcontractor, or materialman or any combination thereof wherein any party referred to herein promises to indemnify or hold harmless the other party to the agreement, contract, or guarantee for liability for damages to persons or property **caused in whole or in part by any act, omission, or default of the indemnitee arising from the contract or its performance, shall be void and unenforceable unless the contract contains a monetary limitation** on the extent of the indemnification that bears a reasonable commercial relationship to the contract and is part of the project specifications or bid documents, if any

. . .

(emphasis added)  The Contract contains no monetary limitation on the extent of indemnification consistent with this Florida statute.  Hence, the "portion" of the Contract that requires CSCI to defend and indemnify Transeastern from its own acts or omissions which result in injury is "void and unenforceable."

The Contract also provided that CSCI would have Transeastern named as an insured on CSCI's insurance policy.  CSCI did so with the Mid-Continent Policy.  The Additional Insured endorsement of the Policy provided:

> WHO IS AN INSURED (Section II) is amended to include
> as an insured [Transeastern], but only with respect to
> liability directly attributable to your [CSCI's] performance
> of "your [CSCI's] work for that insured [Transeastern].
>
> *   *   *
>
> This amendment applies only when you [CSCI] have agreed
> by written "Insured contract" to designate [Transeastern] as
> an additional insured subject to all provisions and limitations
> of this policy.

The Policy defines "insured contract" as:

> That part of any other contract or agreement pertaining
> to your [CSCI's] business . . . under which you assume the
> tort liability of another party [Transeastern] to pay for
> "bodily injury" or "property damage" to a third person
> or organization [Juarez], provided the "bodily injury" or
> "property damage" is caused, in whole or in part, by you
> [CSCI] or by those acting on your [CSCI's] behalf.  Tort
> liability means a liability that would be imposed by law
> in the absence of any contract or agreement.

Based upon the foregoing contractual and policy provisions, Mid-Continent correctly contends that in order for Transeastern to be an insured under the Policy, there must be an "insured contract" between Transeastern and CSCI. Mid-Continent then asserts that there is no "insured contract" between the parties because the provision of the Contract wherein CSCI agreed to defend and indemnify Transeastern from its own acts and omissions is void under Fla. Stat. § 725.06. Mid-Continent relies upon *True Oil Co. V. Mid-Continent Cas. Co.*, 173 Fed. Appx. 645, 651, 2006 WL 728772, *5 (10th Cir. 2006) for this conclusion. Mid-Continent is correct that there is no "insured contract" to the extent Mid-Continent would be obligated to defend and indemnify Transeastern for its own acts or omissions. While reliance upon Fla. Stat. § 725.06 aides Mid-Continent's case in this regard, resort to that statute is unnecessary to arrive at this conclusion. A reading of the plain language of the Policy leads to the same result.

First, Transeastern is an insured under the policy "only with respect to liability directly attributable to [CSCI's] performance of [CSCI's work] for [Transeastern]." Hence, Transeastern is not an insured with respect to its own work or its own acts or omissions. Additionally, an "insured contract" is one where CSCI "assume[d] the tort liability of [Transeastern] . . . *provided the 'bodily injury' . . . is caused , in whole or in part, by [CSCI] or by those acting on [CSCI's] behalf*." (emphasis added) Thus, an agreement by CSCI to assume the tort liability of Transeastern where the injury was caused in whole or in part by Transeastern's own acts or omissions is not an "insured

contract".  The Policy only covered Transeastern as an insured for vicarious tort liability it might incur as a result of its contractual relationship with CSCI. Transeastern was not an insured with respect to tort liability that it caused.

Section 725.06 of the Florida Statutes only voided that portion of the Contract that attempted to impose on CSCI a contractual obligation to defend and indemnify Transeastern from its own acts or omissions.  It did not void the entire contractual indemnity provision.  *Linpro Florida Inc v. Almandinger,* 603 So.2d 666, 667 n.1 (Fla. Dist Ct. App. 1992).  Mid-Continent's reliance upon *True Oil* is misplaced.  In *True Oil,* the insured agreed to indemnify another party from liability arising from the other party's own negligence.  Additionally, the policy defined "insured contract" as one where the insured assumed "the tort liability of another party," which includes the assumption of liability for the other party's own acts or omissions.  Thus, both the underlying contract between the parties and the insurance policy in *True Oil* sought to provide indemnification and coverage for a contractual obligation that was violative of the Wyoming's public policy.  Under those circumstances, the court concluded that there was no "insured contract" between the parties.

Here, the definition of "insured contract" excludes from its ambit coverage for Transeastern's own acts or omissions.  Therefore, the Policy only relates to the portion of the indemnification provision of the Contract which is enforceable under Florida law.  Unlike the case of *True Oil,* the Policy in this case does not seek to extend coverage beyond that permitted by Florida law.  Furthermore, § 725.06

Page 7 of  14

expressly provides that "[a]ny portion" of a contract which violates the statute is void, not the entire contractual provision. *Linpro Florida,* 603 So.2d at 667 n.1. Therefore, no "insured contract" exists between CSCI and Transeastern which would render Transeastern an insured under the Policy, and would entitle Transeastern to a defense and indemnification, where Transeastern is sued for bodily injury or property damage to a third person which is alleged to be caused by acts or omissions of Transeastern. An "insured contract" does exist, however, between CSCI and Transeastern which would render Transeastern an insured under the Policy, and would entitle Transeastern to a defense and indemnification, where Transeastern is sued for bodily injury or property damage to a third person which is alleged to be caused by acts or omissions of CSCI or by those acting on CSCI's behalf.

*B. Transeastern is Being Sued for its Own Acts and Omissions in the Underlying Suit*

In his amended complaint[1] in the underlying suit, Juarez has sued Transeastern, CSCI and J.A.A. Construction, Inc. ("JAA"), one of CSCI's subcontractors. The amended complaint contains three counts, one against each of the defendants. Each count alleges that each defendant owed Juarez a duty to supervise activities on the job site where he was injured, a duty to secure the

---

[1] At the hearing on the present motions for summary judgment, it was represented to the Court that Juarez had a pending motion to amend his complaint again to assert vicarious liability on the part of Transeastern. To date, no one has advised the Court of the outcome of that pending motion. As a result, the Court is going to proceed on the basis of the allegations in Juarez's amended complaint.

plywood deck that collapsed and caused his injury, a duty to inspect the job site to protect him from exposure to unreasonably dangerous conditions and a duty to warn him of dangerous conditions.  Juarez also alleges that each defendant, individually and separately, breached the duties owed to him, thus resulting in each defendant being negligent, grossly negligent and having engaged in wrongful conduct.  Nowhere in the amended complaint is there an allegation that any one defendant is vicariously liable to Juarez based upon the acts or omissions of any other defendant.  Thus, each defendant is alleged to be liable to Juarez based upon its own separate and independent acts or omissions.  As discussed previously, neither the Policy or the Contract, as interpreted pursuant to Fla. Stat. § 725.06, requires a defense or coverage for Transeastern's own acts or omissions.

The fact that the amended complaint can be read to assert that each defendant had the same overlapping duties to Juarez is immaterial.  While a trier of fact in the underlying suit could find that each defendant owed Juarez the same duties and each defendant breached those same duties, based on the pleading, such a finding could only be made on the basis of each defendant's own acts or omissions. *See Jackson v. York Hannover Nursing Centers*, 876 So.2d 8, 12-13 (Fla. Dist. Ct. App. 2004)( the term "joint tortfeasors" is defined as two or more negligent entities whose conduct combines to produce a single injury.  To be a joint tortfeasor "each actor must have committed some wrong that results in an injury or damage to another. 'Although there is but a single damage done, there are several wrongs'").

What the court in *Jackson* described is precisely what is alleged in the underlying suit. Each of the defendants is alleged to have committed separate and independent wrongs which may have combined to cause a single injury. There are no allegations that any one party is liable because of the wrongful acts of another. Thus, based upon the amended complaint in the underlying suit, the parties would not be able to argue, and the trier of fact could not be asked to find, that any one defendant was liable to Juarez based upon the acts or omissions of any of the other defendants. While the defendants could be found joint tortfeasors, based upon their own acts or omissions which may have jointly contributed to Juarez's injury, the amended complaint does not permit any defendant to be found vicariously liable for the acts or omissions of each other.

Because Transeastern is being sued for its own acts or omissions in the underlying suit and not for the vicarious liability of CSCI, Transeastern is not, at the present time, an insured under the Policy. Therefore, Mid-Continent is neither obligated to defend nor indemnify Transeastern in the underlying suit.[2]

---

[2] The Court rejects Transeastern's argument that because Mid-Continent has undertaken to defend the underlying suit under a reservation of rights, it is bound to continue with the defense and is obligated to indemnify Transeastern until it is determined that there is no potential for coverage in the underlying suit. If that were the case, this and all other declaratory judgment actions brought to determine the rights and obligations of parties to an insurance contract during the pendency of underlying litigation would be rendered meaningless.

### C.  *Coverage for CSCI is Excluded*

Mid-Continent also seeks a declaration that coverage of CSCI in the underlying suit is excluded under the Policy.   Section 2 of the Commercial General Liability Coverage Form of the Policy provides, in relevant part:

This insurance does not apply to:

\*     \*     \*

d.  Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e.  Employer's Liability

Bodily injury to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the insured's business;

\*     \*     \*

This exclusion applies :

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay

      damages because of the injury.

   This exclusion does not apply to liability assumed by the insured under an "insured contract".

        *     *     *

COVERAGE C MEDICAL PAYMENTS

        *     *     *

  2. Exclusions

    We will not pay expenses for "bodily injury":

        *     *     *

  b. Hired Person

    To a person hired to do work for or on behalf of any insured or a tenant of any insured.

        *     *     *

  d. Workers Compensation And Similar Laws

    To a person, whether or not an "employee" of any insured, if benefits of the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

        *     *     *

  g. Coverage A Exclusions

    Excluded under Coverage A.

The Court concludes that based on the record evidence, there is no genuine issue of material fact that Juarez, by virtue of being an employee of CSCI's subcontractor and by virtue of the provisions of Fla. Stat. § 440.10(1), was a statutory employee of CSCI.  That being the case, under the foregoing provisions of the Policy, coverage for CSCI is excluded.  CSCI's contention that there is a question of fact as to whether Juarez was a "temporary employee" is rejected.  The record is devoid of any evidence from which that inference could be drawn, and the parties had ample time to conduct discovery which could have produced such evidence if it existed.  The Court also rejects any contention that the exclusions do not apply because of issues as to whether worker's compensation coverage was in fact in place and whether Juarez actually was able to collect under available worker's compensation coverage.  *Florida Ins. Guar. Ass'n, Inc. v. Revoredo,* 698 So.2d 890 (Fla. Dist. Ct. App. 1997).

## Conclusion

In view of the foregoing, Mid-Continent's motion for summary judgment [DE 37] is **Granted in part and Denied in part.**  It is granted to the extent that Mid-Continent sought a declaration that it is not obligated to defend and provide insurance coverage to Transeastern and CSCI in the underlying lawsuit.  It is denied to the extent it sought a declaration that no "insured contract" exists between CSCI and Transeastern with respect to the provision of the Contract requiring CSCI to defend and indemnify Transeastern from liability caused in whole or in part by CSCI and those acting on CSCI's behalf.

Transeastern's motion for summary judgment [DE 44] is **Granted in part and Denied in part.**  It is denied to the extent Transeastern sought a declaration that Mid-Continent owed it and CSCI a duty to defend and provide insurance coverage in the underlying lawsuit.  It is granted to the extent Transeastern sought a declaration that there is an "insured contract" between it and CSCI with respect to the provision of the Contract which required CSCI to defend and indemnify Transeastern from liability caused in whole or in part by CSCI and those acting on CSCI's behalf.  A judgment incorporating this ruling shall be entered separately.  The Clerk of the Court shall **CLOSE** this case.  All pending motions are denied as moot.

Done and ordered in West Palm Beach, Palm Beach County, Florida, this 31st day of March.

KENNETH A. MARRA
UNITED STATES DISTRICT JUDGE